LeVEY v. TURNER.

1. PRINCIPAL AND AGENT—VENDOR AND PURCHASER—RATIFICATION.
Fact that original purchaser of realty who resold the property to plaintiff arranged to have defendant vendors execute land contract direct to plaintiff in order to avoid one transaction did not constitute a ratification by them of anything original purchaser may have said as their purported agent in connection with the transaction.

2. SAME—VENDOR AND PURCHASER—EXECUTION OF CONTRACT—NOTICE.
Defendant vendors of land who had sold it to a first purchaser who in turn had sold it to plaintiff were not liable for misrepresentations of first purchaser to plaintiff notwithstanding vendors executed land contract directly to plaintiff, where, prior to execution of contract, plaintiff was advised by letter that the first purchaser was not the vendors' agent.

Appeal from Cheboygan; Sprague (Victor D.), J. Submitted October 16, 1940. (Docket No. 86, Calendar No. 41,320.) Decided February 7, 1941. Rehearing denied April 11, 1941.

Bill by Annette LeVey against Sophie S. Turner and Carrie M. Humphrey for rescission of a land contract and recovery of money expended thereunder. Cross bill by defendants for accounting and other relief. Decree for plaintiff. Defendants appeal. Reversed.

*Lewis E. Berry,* for plaintiff.

*Carl R. Henry* and *William F. Knapp,* for defendants.

Affirmance of act of another who does not purport to act as agent does not result in liability on principle of ratification, see 1 Restatement, Agency, § 85.

Chandler, J. This suit arises out of the purchase by plaintiff of a parcel of land owned by defendants, located on the shore of Mullet lake in Cheboygan county.

The record shows that on March 24, 1926, Mr. Fultz, a real-estate agent in Cheboygan, contracted to purchase the property from defendants for the sum of $2,000. A written contract was prepared and executed by defendants and forwarded by them to the First National Bank of Cheboygan for the signature of Fultz. He had a working agreement with Mr. Holden, a Detroit real-estate agent, whom he informed that he had the particular parcel in question for sale. Thereupon, Holden, on May 12, 1926, sold the land to plaintiff for the sum of $3,000, and she gave her check in the amount of $500 as a down payment. A few days later, Holden discussed with her the purchase of some property fronting on Carp lake, in the vicinity of Mullet lake, and plaintiff gave him a second check in the amount of $500, upon which was written "deposit on lot 5, Carp Lake." She had, at the time, seen neither of the parcels, and it was agreed that, if she did not want the Carp lake property, the second $500 check should be applied as part of the purchase price of the land on Mullet lake.

In the latter part of May, 1926, plaintiff went to Cheboygan for the purpose of inspecting the properties, and then decided that she did not care for that located on Carp lake and the second $500 check was applied in accordance with the agreement above mentioned.

In view of the events that had transpired since Fultz had purchased the property from defendants, it was arranged that the contract of purchase should run directly to plaintiff, as vendee, rather than Fultz, and sometime in November she executed the same at Detroit where it had been mailed for her

signature. At this time, she made an additional payment of $500, making a total of $1,500, the amount required as a down payment by the contract terms.

Subsequent to her trip to Cheboygan in 1926, plaintiff did not return until 1932, after having been informed that the Mullet lake property was a swamp. In November of that year, she engaged a surveyor to accompany her on an inspection of the land described in the contract. She testified that the premises were in such condition that it was impossible to inspect.

Thereafter, on December 20, 1932, she gave notice of election to rescind the contract, stating:

"You will take notice that the vendee, Annette LeVey, in the above land contract elects to rescind and does hereby rescind said contract by reason of the misrepresentation upon which she relied as to the nature of the land described in said contract as being resort property, containing a brook inhabited by speckled trout, and by the false representation as to the practicability of draining said land and making the same valuable resort property; all of which statements she relied on and which induced her to enter into said contract."

The bill of complaint, praying for rescission and return of the payments made, was filed on February 27, 1933. Defendants answered and filed a cross bill, praying for affirmance of the transaction, an accounting of the amount due upon the contract, payment by plaintiff of the sum so found to be due, and foreclosure in default of such payment.

The bill of complaint alleges that Fultz, as agent of defendants, made certain fraudulent representations concerning the nature of the premises described in the contract of sale, the first of the claims being that he showed her a different piece of prop-

erty which was dry and suitable for resort purposes, whereas she later found that the land she purchased was low, swampy, and wet. It is also claimed that she desired to obtain a parcel with a trout stream and that Fultz represented the stream flowing through the premises to be such, whereas in fact the representation was false.

On the first of the claims, the trial court found in favor of defendants. However, he found that a fraudulent representation had been made in regard to the stream and entered a decree in favor of plaintiff, except that he did not require repayment by defendants of the $1,000 paid to Fultz and Holden as hereinbefore mentioned. Plaintiff has taken a cross appeal from this feature of the decree, and defendants have appealed therefrom as to the relief granted plaintiff.

In granting relief to plaintiff, it was, of course, necessary that the court find that Fultz was acting as the agent of defendants. And he did find that Fultz was a volunteer whose acts were subsequently ratified by defendants.

The Longyear estate, managed by a Mr. Sherman, handled defendants' properties. On March 23, 1926, Fultz wired Sherman that he would pay $2,000 for the premises and instructed that the contract be sent to the Cheboygan bank. The offer was accepted by telegram and the contract forwarded to the bank. On May 15, 1926, Fultz wrote to Sherman:

"Regarding lot 4, section 8, town 36 N., R. 1 west, Cheboygan county, Michigan, I beg to advise that I sold this property to Mr. F. E. Holden of this city at a price of $2,500, pending the posting of abstract, et cetera.

"Today, Mr. Holden advised me that he had resold the property to Annette LeVey of this city at a price of $3,000, although I understand that this

high price was specified in consideration of some other deals between Mr. Holden and Mrs. LeVey.

"In order to make all of these transactions less complicated, I would appreciate it very much if you could make a new contract on a standard Michigan form directly to Annette LeVey of Detroit at a total price of $3,000 with terms of $1,500 per year at 6 per cent. interest, sending the contract to the First National Bank, Cheboygan, Michigan, to be delivered upon receipt of $500, and signing by Annette LeVey. You might specify in the contract where the payments are to be made. Mrs. LeVey is very responsible financially and prompt in her business dealings."

Although it appears that Sherman preferred to have the contract from defendants run to Fultz, who might then execute a contract to plaintiff, it was finally agreed that the same would be made directly to plaintiff in the first instance. It is clear that this was done solely for the purpose, and at the request of Fultz, to avoid an extra transaction.

It was later agreed that the contract should be mailed to a Detroit bank for plaintiff's signature. Plaintiff, by letter dated September 1, 1926, advised Sherman that Fultz had $1,000 as a deposit on the down payment, and in reply thereto Sherman stated:

"I notice in your letter your statement that Mr. Fultz has deposit of $1,000 which I understand you have sent him to apply on this purchase of us. If that is so, I should prefer to have you recall your deposit and send us the whole $1,500 when the time comes."

On September 13, 1926, plaintiff wrote the following to Sherman:

"Your letter of the 8th instant was received and at your request that Mr. Fultz return to me the $1,000 he has as deposit on the Mullet Lake property and I to send the $1,500 direct to you I am sending a

copy of your letter to Mr. Fultz and demanding that he either give the $1,000 to you or return it to me at once.

"I am ready to close as soon as you get this matter adjusted, and as Mr. Fultz is your agent it seems to me that it is up to you to do so.

In reply to this letter, Sherman said:

"Referring to your esteemed letter of September 13th as to the $1,000 that you advanced to Royal A. Fultz of Cheboygan, on your attempted purchase from him of lot 4 of section 8, 36-1 W., Cheboygan county:

"I am not aware that we have ever done anything whatever that would constitute Mr. Fultz as our agent for the sale of this property. We had it for sale and on his application gave him a price, but he has never made any further attempt to buy it than to say that it had been resold to you, and requested me to carry out his sale to you. I cannot under the circumstances see how it happened that you advanced him $1,000 without anything to show his title to take your money, and as I had nothing whatever to do with inducing you to send it to him, I doubt that I shall have any influence with him about it. I think the two ladies who own the property are willing to go on with the sale to you, but not on the basis of your paying $1,000 to Fultz or any other sum until he has the lot to sell."

In spite of the express repudiation of agency existing between defendants and Fultz contained in this letter, plaintiff proceeded to consummate the transaction by executing the contract in Detroit and paying the last $500 required as the down payment.

We assume that Fultz, in dealing with plaintiff, represented to her that he was acting as agent of defendants, but we cannot find that the latter ratified his unauthorized acts. In purporting to act as their

agent, he would be occupying the position of a volunteer, and although defendants might be bound, under proper conditions, by his representations, this could occur only in the event they had done something which amounted to a ratification of his acts as their agent.

The record clearly indicates that the land was first sold to Fultz; that it was resold by him, through Holden, to plaintiff; and that he and Holden were to realize a profit of $1,000 on the deal. The only reason that the contract was made directly to plaintiff from defendants was because it avoided one transaction. This did not amount to a ratification of anything that Fultz might have said or done as the purported agent of defendants. *David Stott Flour Mills* v. *Saginaw County Farm Bureau*, 237 Mich. 657; *Polly* v. *Charouhis*, 253 Mich. 363.

Furthermore, plaintiff was advised that Fultz was not defendants' agent by Mr. Sherman's letter hereinbefore quoted. She was thereby informed prior to the time the contract, which she now seeks to rescind, was effected that Fultz was in no manner defendants' agent. This letter was sufficient to notify her that all defendants were doing was dealing with her directly as the vendee of Fultz and that the only obligations she could expect to enforce against them were those arising by virtue of the terms of the contract. She cannot now complain, as she chose to complete the transaction with full knowledge as to the true relationship existing.

The decree of the trial court is reversed, and one shall be entered dismissing plaintiff's bill of complaint and granting defendants the relief sought in their cross bill, with costs to defendants.

SHARPE, C. J., and BUSHNELL, BOYLES, NORTH, McALLISTER, WIEST, and BUTZEL, JJ., concurred.